United States District Court
Southern District of Texas
**ENTERED**
February 01, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AEP EXCLUDED ASSETCO, LLC, | § § § | |
| Plaintiff/Counter-Defendant, | § | |
| VS. | § § | CIVIL ACTION NO. 4:23-CV-3638 |
| BELLANERGY, LLC, | § § § | |
| Defendant/Counter-Plaintiff/Third-Party Plaintiff, | § § § | |
| VS. | § § § | |
| ADVANCE ENERGY PARTNERS, LLC, Third-Party Defendant. | § § § | |

## MEMORANDUM & ORDER

Before the Court is Defendant Bellanergy, LLC's ("Bellanergy") Motion to Remand (ECF No. 5). For the following reasons, the Court **DENIES** the Motion.

### I. BACKGROUND

This case arises out of a contractual dispute. Plaintiff AEP Excluded AssetCo, LLC ("AEPEAC")[1] purchased hundreds of thousands of feet of drilling pipe from Bellanergy. Pl.'s Original Pet. ¶ 2, ECF No. 1-2. When Bellanergy delivered the pipes, AEPEAC rejected them and refused to pay, alleging that the pipes were non-conforming with the terms of their agreement. *Id.* at ¶ 16. It then filed suit in state court on June 14, 2023, asserting claims for breach of contract and breach of express warranty, and seeking a declaratory judgment that it properly rejected the pipes

---

[1] The agreement at issue was, in reality, between Defendant and third-party Advance Energy Partners, LLC ("AEP"). However, AEPEAC alleges that it is the proper plaintiff in this case because AEP assigned all of its claims and liabilities to Plaintiff AEPEAC. Pl.'s Notice of Removal ¶ 2 & n. 1, ECF No. 1. Accordingly, for purposes of this motion, the Court assumes without deciding that the assignment was valid, and, for simplicity, treats AEP and AEPEAC interchangeably.

1

and is entitled to a full refund. *Id.* at ¶¶ 22–24, 32. AEPEAC's Original Petition included allegations that Defendant had agreed that its products would not "infringe on any license or patent which has been issued or for which application has been made." *Id.* at ¶ 11. The Original Petition also explains that AEPEAC requested quotes from Bellanergy for "GBCD Pipe," which is a type of pipe that has a specific connection design patented by GB Connections. *Id.* at ¶¶ 12–15. AEPEAC alleged that the pipe it received did not have the desired GBCD connection design, and that they received a letter from GB Connections on February 14, 2023, which explained "that the pipe provided by Bellanergy was in fact counterfeit and/or contained GB Connections' proprietary information." *Id.* at ¶¶ 16–19. These allegations notwithstanding, AEPEAC's Original Petition did not specifically base its claims on the non-infringement provision of the agreement. It more generally stated that Bellanergy breached the agreement by delivering non-conforming pipe. *Id.* at ¶¶ 22–24.

On July 10, 2023, Bellanergy filed its answer and brought breach of contract claims against AEP. Def.'s Answer to Pl.'s Original Pet. ¶¶ 58–87, ECF No. 1-2. On July 31, 2023, AEPEAC filed its First Amended Petition, which added a breach of contract claim that referenced the non-infringement clause of the party's agreement. Pl.'s First Am. Pet. ¶¶ 21, 31, ECF No. 1-2.

On August 28, 2023, Bellanergy filed its Answer to Plaintiff's First Amended Petition. In the Answer, Bellanergy denied that its goods infringed upon any valid patent, and argued that the state court "lack[ed] subject matter jurisdiction to determine the validity of any patent, or whether the goods infringed on any patent." Def.'s Answer to Pl.'s First Am. Pet. ¶¶ 12–13, ECF No. 1-2. It also asserted breach of contract claims against AEPEAC.[2] *Id.* at ¶¶ 60–97. These counterclaims

---

[2] Defendant denied that AEP validly assigned its liabilities to AEPEAC, but explained that its counterclaim is against AEPEAC "[t]o the extent Counter-Defendant [AEPEAC] validly accepted an assignment or other transfer of AEP's liabilities." *Id.* at ¶ 62, 79, 88.

essentially allege that Bellanergy tendered delivery of conforming and non-defective goods, and that AEPEAC materially breached the agreement by not paying Bellanergy in full. *See id.*

On September 27, 2023, thirty days after Bellanergy filed its Answer to Plaintiff's First Amended Petition, AEPEAC removed to this Court pursuant to the patent removal statute, 28 U.S.C. § 1454(a). Pl.'s Notice of Removal 5. AEPEAC's notice asserts that this Court has jurisdiction based upon "the patent issues and jurisdictional defenses raised by Defendant." *Id.* at ¶ 8. Bellanergy now moves to remand the case to state court. AEPEAC and AEP oppose remand. *See* Pl.'s Resp. 5 & n.1, ECF No. 9.

## II.   LEGAL STANDARD

### A. Choice of Law

To the extent that this case involves patent law issues, Federal Circuit law governs questions of substantive patent law, while Fifth Circuit law governs all other questions. *In re Deutsche Bank Trust Co. Americas*, 605 F.3d 1373, 1377 (Fed. Cir. 2010); *Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.*, 265 F.3d 1294, 1307 (Fed. Cir. 2001); *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 803 (Fed. Cir. 2000) ("In reviewing district court judgments, we apply the law of the circuit in which the district court sits with respect to nonpatent issues, but we apply our own law to issues of substantive patent law."); *Sulzer Textil A.G. v. Picanol N.V.*, 358 F.3d 1356, 1362–63 (Fed. Cir. 2004) ("We answer this question on an issue by issue basis and will apply the law of the regional circuit to which district court appeals normally lie, unless the issue pertains to or is unique to patent law.") (quotations omitted); *Viam Corp. v. Iowa Exp.-Imp. Trading Co.*, 84 F.3d 424, 428 (Fed. Cir. 1996). Significantly, courts apply Federal Circuit law to determine whether cases "arise under" federal patent laws. *See, e.g.*, *Microsoft Corp. v. GeoTag, Inc.*, 817 F.3d 1305, 1311 (Fed. Cir. 2016) (explaining that district

court erred in applying regional circuit law, rather than Federal Circuit law, to assess whether there was 28 U.S.C. § 1338 jurisdiction); *Mars Inc. v. Kabushiki–Kaisha Nippon Conlux*, 24 F.3d 1368, 1371 (Fed. Cir. 1994) ("The issue whether the district court had jurisdiction [under § 1338] to hear Mars' claim of Japanese patent infringement is of importance to the development of the patent law and is clearly a matter that falls within the exclusive subject matter responsibility of this court.") (internal quotation marks and citations omitted); *Helfgott & Karas, P.C. v. Dickinson*, 209 F.3d 1328, 1333–34 (Fed. Cir. 2000) (explaining that whether an action arises under the scope § 1338 presents a question that is unique to patent law); *cf. Med. Components, Inc. v. Osiris Med., Inc.*, 226 F. Supp. 3d 753, 760–61 (W.D. Tex. 2016) (applying Federal Circuit law to jurisdictional question). Therefore, Federal Circuit law binds this Court to the extent that it analyzes questions of substantive patent law, including jurisdictional questions unique to patent law, such as applications of the patent removal statute. Fifth Circuit law binds this Court in all other areas, including law on removal that is not unique to patent law.

### B. Removal Under 28 U.S.C. § 1454

Following removal to federal court, remand is proper if the Court finds that there was a defect in removal procedure, or that it lacks subject matter jurisdiction. 28 U.S.C § 1447(c). In either situation, AEPEAC, the removing party, bears the burden of showing that removal was proper. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). The Court construes any ambiguities against removal, and strictly in favor of remand. *Id.*

### A. Removal Procedure

The procedural aspects of the patent removal statute generally mirror those of the general removal statute, 28 U.S.C. § 1446. However, the patent removal statute is different in two relevant ways. First, unlike the general removal statute, the patent removal statute allows any party—not

just defendants—to remove an action that arises under federal patent law. *Vermont v. MPHJ Tech. Invs., LLC*, 803 F.3d 635, 644 (Fed. Cir. 2015); *see also* § 1454(b)(1) ("the action may be removed by any party"). That is, under the patent removal statute, a plaintiff may remove an action based upon a federal patent law counterclaim. *MPHJ Tech. Invs.*, 803 F.3d at 644.

Second, while § 1454 adopts the same time limitations set forth in § 1446, it provides that those limitations "may be extended at any time for cause shown." § 1454(b)(2). Thus, to determine whether a notice of removal is timely under § 1454, courts conduct a two-step analysis. First, they assess whether the notice of removal was filed "within 30 days after receipt . . . of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."[3] *Hill Country Tr. v. Silverberg*, No. 1:18-CV-635-RP, 2018 WL 6267880, at *6 (W.D. Tex. Nov. 28, 2018) (quoting § 1446(b)(3)). Second, if removal was *not* filed within 30 days of notice of removability, courts assess whether the removing party has shown cause for extension of the deadline. *See id.* at *8. "Section 1454 does not define 'cause shown,' and there is sparse authority interpreting the provision," though courts generally apply Federal Rule of Civil Procedure 6(b)(1)(B)'s "excusable neglect" standard. *Id.* (collecting cases). Under this standard, district courts "enjoy broad discretion to grant or deny an extension," and may consider the following factors: "(1) 'the possibility of prejudice to the other parties,' (2) 'the length of the applicant's delay and its impact on the proceeding,' (3) 'the reason for the delay and whether it was within the control of the movant,' and (4) 'whether the movant has acted in good faith.'" *Salts v. Epps*, 676 F.3d 468, 474

---

[3] § 1446's procedural requirements use language that track its requirement that only defendants may remove actions to federal court—for example, it states that "the defendant" must file a notice of removal within 30 days of receiving notice of removability. § 1446(b)(1). § 1454 provides that "removal of an action under this section shall be made in accordance with section 1446, except that if removal is based solely on this section . . . the action may be removed by any party." § 1454(b)(1). Therefore, when applied to patent removal, § 1446's language is best read more broadly, to encompass both defendants and plaintiffs where appropriate.

(5th Cir. 2012) (quoting 4B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1165 (4th ed.)).

### B. Subject Matter Jurisdiction

The patent removal statute provides that "[a] civil action in which any party asserts a claim for relief arising under any Act of Congress relating to patents . . . may be removed to [the appropriate federal district court]." § 1454(a). The fact that patent issues underly parties' claims "does not mean that the entire . . . claim 'arises under' patent law." *DuVal Wiedmann, L.L.C. v. Inforocket.com, Inc.*, 374 F. App'x 482, 484 (5th Cir. 2010) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 811 (1988)). Courts consider a civil action to "arise under" federal patent law if federal patent law creates the cause of action asserted or if the case involves a federal patent issue that is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *MPHJ Tech. Invs.*, 803 F.3d at 645 (quoting *Gunn v. Minton*, 568 U.S. 251, 258 (2013)); *see also Christianson*, 486 U.S. at 808–09.

### III. ANALYSIS

### A. Subject Matter Jurisdiction

In this case, federal patent law did not create the causes of action underlying parties' claims or crossclaims. And the parties agree that Bellanergy's patent-based defenses to AEPEAC's claims do not give rise to federal jurisdiction, given that "a case raising a federal patent-law defense does not, for that reason alone, 'arise under' patent law." *F. US, Inc. v. Musselwhite*, No. CV H-15-1084, 2016 WL 6909297, at *3 (S.D. Tex. Jan. 22, 2016) (quoting *Christianson*, 486 U.S. at 809). The parties' disagreement is whether Bellanergy's counterclaims fall within the "'special and small category of [claims]' in which arising under jurisdiction still lies," that is, whether the patent

6

issues present satisfy the four *Gunn* factors. *MPHJ Technology Investments*, 803 F.3d at 465 (quoting *Gunn*, 568 U.S. at 258). The Court takes each factor in turn.

1. **Necessarily raised**

A federal patent issue is "necessarily raised" if its resolution is necessary to resolving a claim. *See Gunn*, 568 U.S. at 259. Bellanergy submits that its contract-based counterclaims do not raise any patent issues and "could not conceivably arise under federal patent law." Def.'s Mot. 10, ECF No. 5. In its reply, Bellanergy adds that, even if patent issues could be relevant to its counterclaim, they are not necessary to the counterclaim's resolution. *Cf. Christianson*, 486 U.S. at 810–13 (concluding that, where plaintiff could have supported its antitrust claims with any of several theories having nothing to do with patents, its claims did not "arise under" patent law).

However, as AEPEAC points out, Defendant can only recover if its pipes conformed with *all* material provisions of the contract, including the provision providing that the pipes would not "infringe on any license or patent which has been issued or for which application has been made." *Id.* at ¶ 11. It follows that Defendant's counterclaim necessarily raises the question of whether its pipes infringed upon GB Connections' patent. *Cf. Dell Techs. Inc. v. TiVo Corp.*, 392 F. Supp. 3d 704, 718 (W.D. Tex. 2019) (finding that plaintiff's breach-of-contract claim necessarily raised a federal issue of patent infringement because it raised a question as to whether a third party's patent was infringed). The Court concludes that Defendant's counterclaim raises a federal patent issue.

2. **Actually disputed**

The federal patent issue is "actually disputed." Defendant contends that it did not infringe upon a valid patent, while Plaintiff argues that it did. *Cf. Gunn*, 568 U.S. at 259.

3. **Substantial**

In order for an issue to be considered "substantial," its resolution must be important "to the

federal system as a whole." *Id.* at 260. "[I]t is not enough that the federal issue be significant to the particular parties in the immediate suit; that will always be true when the state claim 'necessarily raise[s]' a disputed federal issue." *Id.* (quoting *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005).

The federal system has a strong interest in the availability of a federal forum to resolve patent claims, and, relatedly, in "the development of a uniform body of [patent] law." *Id.* at 261 (quoting *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 162 (1989)); *see also* 28 U.S.C. § 1338(a) (granting federal courts original and exclusive jurisdiction over patent suits). But only some patent issues implicate those interests. In assessing the substantiality of patent issues, courts draw a meaningful distinction between "backward-looking" and "forward-looking" issues. "Backward-looking" patent issues present no live questions, that is, their resolution bears no risk of impacting patent-holder's rights. *See, e.g.*, *Gunn*, 568 U.S. at 261–62 (finding that patent issue was not substantial where it posed the "backward-looking" "hypothetical" question of whether already-completed patent infringement suit would have been different had attorneys raised a certain argument); *Dell Techs. Inc.*, 392 F. Supp. 3d at 719 (patent issue not substantial where issue involving infringement determination was "backward looking" as patentee was not a party to the suit, patentee had settled with defendant, and "[p]erhaps of most importance," patent had expired, meaning that there was no possibility of future infringement action).

"Forward-looking" patent issues, on the other hand, pose questions involving live patents, and their resolution risks impacting patent-holder's rights. *See, e.g.*, *Jang v. Bos. Sci. Corp.*, 767 F.3d 1334, 1337 (Fed. Cir. 2014) (patent infringement and validity issues were substantial as they were "neither entirely backward-looking nor hypothetical" and had "real world potential" for impacting "subsequently arising infringement suits affecting other parties"); *Forrester Env't*

*Servs., Inc. v. Wheelabrator Techs., Inc.*, 715 F.3d 1329, 1334 (Fed. Cir. 2013) (explaining that forward-looking issues are substantial because they "could result in inconsistent judgments between state and federal courts"); *Xitronix Corp. v. KLA-Tencor Corp.*, 916 F.3d 429, 441 (5th Cir. 2019) (patent issue was substantial where patent was "currently valid and enforceable" and litigation thus had "the potential to render that patent effectively unenforceable").

This case presents a "forward-looking" patent issue. Nothing in the record indicates that the patent at issue is expired, or that there is anything stopping GB Connections from filing an infringement suit against Bellanergy. The Federal Circuit has explained that where, as here, "resolution of the contract claim itself requires resolution of underlying issues of infringement, there exists the possibility that the patentee would file suits alleging infringement by others." *Jang*, 767 F.3d at 1337. Patent issues that present this possibility of separate actions are "substantial" because of "the potential of conflicting rulings" and "inconsistent judgments" that could affect parties to the dispute, as well as third parties who may be involved in subsequent infringement actions. *Id.* Those concerns apply in full force here. Allowing the instant suit to proceed in state court risks the state and federal systems rendering inconsistent rulings as to Bellanergy's alleged infringement, should GB Connections later decide to sue Bellanergy in federal court. As such, the Court concludes that the patent issue in this case is "substantial."

    4. **Federal-state balance**

This final requirement typically tracks the third; a substantial federal issue is unlikely to disrupt the federal-state balance, while an insubstantial one impermissibly treads upon matters best left to the states. *See, e.g.*, *Gunn*, 568 at 264. For instance, in *MPHJ Tech. Invs.*, the Federal Circuit found that the patent issue was substantial, and then found that it was capable of resolution in federal court without disrupting the federal-state balance, because "[a]llowing a state court to

9

resolve a patent law preemption question risks 'inconsistent judgments between state and federal courts.'" 803 F.3d at 646 (quoting *Jang*, 767 F.3d at 1337).

To be sure, federal courts should not unjustifiably "diminish the role of [states] in regulating commercial agreements and misrepresentations." *Dell Techs. Inc.*, 392 F. Supp. 3d at 720. But here, given that a substantial, forward-looking patent issue underlies Defendant's counterclaims, keeping this case in federal court will not risk disrupting states' adjudicative role. The Court finds the fourth *Gunn* factor satisfied.

### B. Procedural defects

#### 1. Adequacy of Plaintiff's statement of the grounds for removal

Defendant asserts that Plaintiff's Notice of Removal does not contain the requisite "short and plain statement of the grounds for removal." § 1446(a). Plaintiff's Notice of Removal stated that "the patent issues and jurisdictional defenses raised by Defendant provides a proper basis for removing the case." Pl.'s Notice of Removal ¶ 8. Defendant is correct that this statement is cursory and does not explicitly identify that Defendant's counterclaims are what supports federal jurisdiction. However, Courts interpret § 1446(a)'s requirement "liberally," looking "to the entire record of a case to determine whether the proper jurisdictional underpinnings are present." *Kerbow v. Kerbow*, 421 F. Supp. 1253, 1258 (N.D. Tex. 1976) (citing 14C Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure: Jurisdiction*, §§ 3733–3734 (4th ed. 2009)). The Notice identifies "patent issues . . . raised by Defendant," Pl.'s Notice of Removal ¶ 8, and, for reasons explained above, the record of the case supports federal jurisdiction. Therefore, the Court declines to remand this case based on these narrow procedural grounds.

#### 2. Timeliness

Defendant also asserts that Plaintiff's Notice of Removal was untimely. If, as Plaintiff

contends, Defendant's Answer to Plaintiff's First Amended Complaint constituted the basis for removal, Plaintiff's removal was timely, as Plaintiff filed its notice within thirty days of receipt. Plaintiff's own filings could not provide notice of the case's removability, because unlike Defendant, Plaintiff could support its claim with several theories that are wholly unrelated to patents. *See Christianson*, 486 U.S. at 810–13 (concluding that claims did not "arise under" patent law where plaintiff could have support its claims with several non-patent-related theories). For Plaintiff to show that Defendant breached the contract because the delivered pipes did not align with its terms, Plaintiff need only point to one instance of nonconformity—which could be several apart from noncompliance with the non-infringement provision. By contrast, for Defendant to prevail on its counterclaims by demonstrating that the pipes *did* conform with the contract, it must show that they conformed with every material term of the contract, including the non-infringement provision. Therefore, the case became removable only when Defendant brought counterclaims alleging that the pipes conformed with the parties' agreement.

To the extent that Plaintiff had notice of the case's removability when Defendant filed its first answer on July 10, 2023, the Court finds that "cause shown" supports extension of the thirty-day period. § 1454(b)(2). At this juncture, it is easier to read the pleadings on and before July 10, 2023 to necessarily implicate patent law. But earlier on in the litigation, before Plaintiff explicitly raised an infringement-based breach of contract claim, and Defendant raised a related counterclaim, it was less clear that patent issues were so intertwined with the case. Plaintiff submits that prior to filing its First Amended Complaint, it pursued a theory that Bellanergy's pipes were "counterfeit," not that they infringed upon GB Connection's patent. *See* Pl.'s Original Pet. ¶ 22 ("Defendant . . . breached the Agreement by delivering non-conforming, defective, and counterfeit pipe."); *see also id.* at ¶ 19 (alleging February 14, 2023 letter from GB Connections informed

11

AEPEAC that the pipes were counterfeit and/or infringing). Considering these circumstances, the Court finds that AEPEAC acted in good faith, for an understandable reason, in delaying its filing of the notice of removal. Further, even if Bellanergy's July 10th answer provided notice of removability, the removal deadline would have been August 9, 2023, which was only 49 days before AEPEAC ultimately removed the case. Lastly, the Court cannot identify any significant impact on the case or prejudice to Bellanergy related to this delay that outweigh the foregoing considerations. Ultimately, even if the removal deadline was August 9, 2023, the Court finds good cause to extend this deadline such that Plaintiff's removal was timely.

### C. Bellanergy's request for fees

Bellanergy seeks a § 1447(c) award of attorney fees incurred as a result of AEPEAC's removal. Such an award is only appropriate when courts remand the case following an objectively unreasonable removal. *See Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 292–93 (5th Cir. 2000). Removal was proper in this case, and so the Court declines to award fees.

### IV. CONCLUSION

For the forgoing reasons, the Court hereby **DENIES** Defendant's Motion to Remand.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, this the 1st day of February, 2024.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE